IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TROY D. SMITH                                                                                          PLAINTIFF

               v.                                   Civil No. 12-2109

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                 DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

      Plaintiff, Troy Smith, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

      Plaintiff filed his DIB application on March 19, 2009,, alleging an onset date of February 2, 2009, due to coronary artery disease status post myocardial infarction and stenting, hypertension, chronic back pain, obesity, arthritis in the hands, and depression. Tr. 106-112, 146, 180-181, 200, 231-238. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 58-71. An administrative hearing was held on June 10, 2010. Tr. 25-55. Plaintiff was present and represented by counsel.

      At the time of the hearing, Plaintiff was 42 years old and possessed an eleventh grade education and certification as a nursing assistant. Tr. 18, 29. He had past relevant work ("PRW") experience as a certified nursing assistant, lumber stacker, poultry hanger, poultry dressing worker, furnace tender, machine operator, and stacking machine tender. Tr. 29-35, 147, 153, 155, 169-176, 207-214.

      On November 16, 2010, the ALJ found Plaintiff's coronary artery disease status post myocardial infarction and stenting, hypertension, chronic back pain, and obesity to be severe, but concluded they

did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 13-15. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to perform sedentary work requiring only occasional climbing, balancing, stooping, kneeling, crouching and crawling. Tr. 15-18. He also determined that Plaintiff should avoid concentrated exposure to temperature extremes, fumes, odors, gases, poor ventilation; should avoid hazards; and, should not perform jobs that require driving as a part of the duties. The ALJ then concluded that Plaintiff could perform work as a machine tenderer, assembler, and cashier. Tr. 18-19.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 24, 2012. Tr. 1-4, 5-7. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 10, 11.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings

2

of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff contends that the ALJ erred in concluding that he was not disabled because: 1) the ALJ concluded that Plaintiff's was not entirely credible; 2) the ALJ concluded that Plaintiff could perform sedentary work; 3) the ALJ failed to fully and fairly develop the record with regard to Dr. Hoang's

3

indication that Plaintiff suffered from moderate physical limitation and would require further work-up; and, 4) the ALJ failed to obtain an updated medical expert opinion.

### A. Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of medication; and, 5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The standard of evaluation is not whether Plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work). While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ discredited Plaintiff's testimony for several reasons: 1) Plaintiff's work history revealed that he had worked only sporadically prior to his alleged onset date raising a question as to the cause of his unemployment, 2) Plaintiff was able to begin exercising within a month of the placement of his original stents, 3) Plaintiff reported the ability to perform housework, care for his personal hygiene, prepare meals, perform yard work, shop for necessary items, and manage his finances; 3) Plaintiff did not stop smoking, in spite of his doctor's advisement that he cease; and, 4) Plaintiff's symptoms did not necessitate the use of "rescue" medication (namely Nitroglycerin) to treat his alleged chest pain. Plaintiff attempts to explain these discrepancies, stating 1) his sporadic work record and cessation of employment prior to his alleged onset date were due to his inability to withstand the heat of factory work;

2) he was able to return to exercising fairly quicky, but his condition worsened thereafter when one of the stents failed; and, 3) he did not necessitate the use of Nitroglycerine because he was able to control his chest pain with rest.

After reviewing the evidence, of record, we find substantial evidence to support the ALJ's credibility determination. Regardless of the cause for his unemployment, Plaintiff has admitted that his work history was sporadic. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability.")). And, at one month post stent placement, he reported the ability to walk 20-30 minutes per day with no limitations. At this time, his treating cardiologist, Dr. Fleck, directed him to increase his exercise to 30-60 minutes per day. Tr. 247, 293, 315, 340. While it is true that one of Plaintiff's stents failed and required that he undergo stent replacement in September 2009, following the stent replacement procedure there was an excellent angiographic appearance with no residual stenosis. Tr. 359-370, 372-410, 416-434, 436. In January 2010, Plaintiff reported that his chest pain had resolved, and he had not required the use of Nitroglycerine. Tr. 566. He was also taking Viagara, which he could not take with the Nitroglycerine, and Zoloft, which he reported was effective at treating his depression. Due to elevated blood pressure, his Diovan dosage was adjusted. When he returned ten days later, his blood pressure had improved, and he had no complaints. Tr. 564-565. Plaintiff did not seek out treatment again until May 2010, when he complained of lower back pain. Tr. 563. His blood pressure was slightly elevated at 140/98, so Dr. Elwange adjusted his Metoprolol dosage. He also added Flexeril to treat Plaintiff's back pain. However, he noted that Plaintiff's coronary artery disease was stable status post myocardial infarction with two stents, and Plaintiff was advised to diet, exercise, and lose weight. There are no further medical records.

The record also reveals that Plaintiff was advised to stop smoking on numerous occasions. And, although he did report a temporary cessation, Plaintiff was noted to be smoking up to one half package of cigarettes per day. Tr. 247, 293, 315, 340, 344-348, 357, 411. Medical records reflect that smoking

AO72A
(Rev. 8/82)

likely contributed to Plaintiff's coronary artery disease, and his continued smoking amounts to a failure to follow a prescribed course of remedial treatment. *See Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits).

Further, we find that Plaintiff's ability to control his chest pain via rest also distracts from his allegation of disabling pain. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). Dr. Elwange's advisement that Plaintiff exercise and lose weight is also contrary to Plaintiff's contention of total disability. When combined with Plaintiff's reported ability to wash dishes, sweep, perform light housework and yard work, shop in stores, visit friends and family, visit his grandson, watch movies, go to parks, fish, and handle financial matters, it is clear that substantial evidence supports the ALJ's credibility determination in this case. Tr. 182-189, 215-222.

### B. RFC and Sedentary Work:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer*

6

*v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 CFR § 404.1567(a).

Our review of the record reveals substantial evidence to support the ALJ's RFC assessment. As previously mentioned, Plaintiff suffered a heart attach and underwent stent placement in February 2009. Tr. 249-256, 265-291, 316-328, 440-561. Initially, his recovery went well. However, in August 2009, Plaintiff's chest pain, shortness of breath, and fatigue returned. Tr. 344-348, 357, 411. An exercise stress test was abnormal revealing a small area of ischemia and an ejection fraction rate of 43%.[1] Tr. 349-356, 412-414. Cardiovascular characterization showed significant one vessel coronary artery disease and incomplete stent apposition. Tr. 359-370, 372-410, 416-434, 436. Accordingly, the stent was replaced. Thereafter, Plaintiff's chest pain resolved and he reported no need for Nitroglycerine. Tr. 563, 564-565, 566. Although his blood pressure remained somewhat unstable, it does appear to have responded to medication. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (holding an impairment that can be controlled by treatment or medication is not disabling).

We also note that Dr. Van Hoang's July 2009 general physical exam revealed normal blood pressure; no heart abnormalities; no range of motion deficits; no muscle atrophy; normal gait and coordination; the ability to hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick

---

[1] To meet the listing, a left ventricular ejection fraction of thirty percent or less and a cardiologist's conclusion that the performance of an exercise test will present a significant risk to the individual is required. 20 C.F.R. Pt. 404, subpart. P, App. 1, § 4.04.

7

up a coin, stand/walk without assistive devices, walk on heel and toes, squat and arise from a squatting position; and, grip normally in both hands. Dr. Hoang concluded that Plaintiff's conditions would result in moderate physical limitations for work.

Plaintiff contends that the ALJ's RFC assessment does not take into account his need to elevate his legs, take breaks, inability to maintain a competitive pace, fatigue, swelling and pain in his hands, and inability to hold onto a grinder. However, aside from Plaintiff's testimony and self reports in this regard, we can find no objective evidence to support these contentions. Plaintiff's medical records have centered primarily around his heart condition. He has not complained of upper and lower extremity pain and swelling, problems with his hands, or the need to take frequent breaks. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (failure to seek treatment in the seven months prior to administrative hearing properly considered). He has also failed to report his alleged medication side effects to his doctor. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult).

Although Plaintiff did complain of hand pain to Dr. Hoang, his examination failed to indicate any specific hand limitations. *See Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) (holding lack of objective medical evidence is a factor an ALJ may consider). In fact, he assessed Plaintiff with only moderate work-related limitations. And, the non-examining consultants concluded that he could perform light work. Giving Plaintiff the benefit of the doubt, however, the ALJ found he could perform sedentary work requiring only occasional climbing, balancing, stooping, kneeling, crouching and crawling; no concentrated exposure to temperature extremes, fumes, odors, gases, or poor ventilation; no exposure to hazards; and, no driving. Because the objective medical evidence and the RFC assessments of record indicate that Plaintiff was capable of performing at least light work, we find substantial evidence also supports the ALJ's determination that Plaintiff could perform a limited range of sedentary work.

8

### C.     Fully and Fairly Develop the Record:

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

"The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). Plaintiff contends that the ALJ erred in failing to have Plaintiff's follow-up with further testing regarding his alleged hand pain. However, as previously noted, Plaintiff's alleged hand pain had not been reported at previous appointments, and was not again mentioned by the Plaintiff. None of Plaintiff's doctors documented complaints of hand pain or restrictions associated with pain in the hands. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Had Plaintiff's impairment been as severe as alleged, we believe he would have sought out medical treatment for it. Accordingly, the ALJ was under no obligation to develop the record in this regard.

### D.     Updated RFC:

Lastly, Plaintiff contends that the ALJ erred by failing to request a more up-to-date RFC assessment. He correctly notes that the most recent RFC assessment was completed in September 2009. On July 30, 2009, Dr. Jim Takach reviewed Plaintiff's medical records and completed an RFC assessment. Tr. 304-311. He concluded that Plaintiff could perform light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling and no concentrated exposure to hazards such as machinery and heights. This assessment was affirmed by Dr. Jerry Mann on September

9

8, 2009. Tr. 334-335. Plaintiff asserts that a more recent assessment is necessary due to the fact that he underwent stent replacement in September 2009. However, a review of the record indicates that the stent replacement was successful, eliminating Plaintiff's complaints of chest pain and shortness of breath. Therefore, although a more recent RFC assessment would have been preferable, its absence does not constitute reversible error as there is no evidence to indicate that Plaintiff's impairments have worsened.

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of April 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)